IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RYAN A. THOMAS, GORAN LAZIC, DOVONI R. SINGLETON, MANISH MOTWANI, ILLINOIS STATE RIFLE ASSOCIATION, and SECOND AMENDMENT FOUNDATION, INC.<br><br>Plaintiffs,<br><br>v.<br><br>BRENDAN F. KELLY, in both his individual and official capacity as Director of the Illinois State Police, JAROD INGEBRIGTSEN, in his individual and official capacity as Bureau Chief of the Illinois State Police Firearms Services Bureau, and JESSICA TRAME, in her individual capacity as former Bureau Chief of the Illinois State Police Firearms Services Bureau,<br><br>Defendants. | No. 1:20 CV 734 |

**PLAINTIFFS' RESPONSE TO THE DEFENDANTS'
<u>PARTIAL MOTION TO DISMISS</u>**

Plaintiffs, RYAN A. THOMAS, GORAN LAZIC, DOVONI R. SINGLETON, MANISH MOTWANI, ILLINOIS STATE RIFLE ASSOCIATION, and SECOND AMENDMENT FOUNDATION, INC., by and through LAW FIRM OF DAVID G. SIGALE, P.C. and KNABE & BEDELL, their attorneys, respectfully submit this Response to the Defendants' Partial Motion to Dismiss pursuant to F.R. Civ. P. 12(b)(1) and 12(b)(6), and state as follows:

<u>INTRODUCTION</u>

The case before the Court is materially distinguishable from the related case

of *Robinson v. Kelly, 20* CV 4270 ("*Robinson*"), also currently pending in this Court. While both involve the Defendants' historic ongoing failure to administer their statutory responsibilities in a manner consistent with the Second and Fourteenth Amendments, the Plaintiffs here seek redress for the Defendants' failure to make a decision on the Plaintiffs' *appeals* of revocation of, or application denials for, a Firearm Owners Identification card ("FOID") and/or a Concealed Carry License ("CCL").

The Defendants concede that Plaintiff Manish Motwani's claims are properly before the Court, and that both organizational Plaintiffs have associational standing and have stated claims; the Defendants separately answered all of these claims. Dkt. 41. Defendants' motion to dismiss now takes limited aim at three individual Plaintiffs and the organizational Plaintiffs' ability to state claims in their own right. As explained below, the Defendants' motion should be substantially denied because, with regard to two individual Plaintiffs[1], their information is incorrect or misapplied; and with regard to the ISRA, it has the ability to demonstrate independent injury sufficient to support its own standing and will seek leave to amend to state this claim. And, all Plaintiffs are entitled to seek monetary damages.

---

[1] Plaintiff Goran Lazic has received his FOID card and concealed carry license, rendering his claims for injunctive and declaratory relief moot. However, as argued herein, his claim for monetary damages survives.

2

## ARGUMENT

### F.R. Civ. P. 12(b)(6) Standard:

"[W]hen considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the Court takes the allegations in the complaint as true, viewing all facts -- as well as any inferences reasonably drawn therefrom -- in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Bell Atlantic Corp.*, 127 S. Ct. at 1955 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1 [ ] (2002))." *Manuel v. Lyles*, 2008 U.S. Dist. LEXIS 51433, 5-6 (N.D. Ill. June 30, 2008); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

The complaint will survive a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012).

Generally, a dismissal pursuant to Rule 12(b)(6) is appropriate only if there is no set of facts consistent with the pleadings under which the plaintiffs could obtain relief. *See Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812 (7th Cir. 2016). To survive such a motion the factual allegations of the complaint, accepted as true for the purpose motion, need only be "plausible" and rise above mere speculation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A well-pleaded complaint may proceed even if it appears 'that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.' *Bell Atlantic Corp.*, 127 S. Ct. at 1965. Nevertheless, the factual allegations in the

3

complaint must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp.*, 127 S. Ct. at 1973-74 & n.14." *Manuel*, 2008 U.S. Dist. LEXIS 51433 at **5-6.

### Organizational Standing under F.R. Civ. P. 12(b)(1):

An association has standing on its members' behalf if: (1) the association's members would otherwise have standing to sue in their own right; (2) the interests the associations seek to protect are germane to their organizational purposes; and (3) neither the claim asserted nor the relief requested requires the participation of individual association members in the lawsuit. *Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011).

### I. Plaintiffs Thomas and Singleton individually have standing to pursue their claims.

#### A. The Defendants' information on Thomas is wrong.

Thomas qualified for and held valid FOID and CCL cards until, in 2015, he moved from Illinois. The Defendants then promptly revoked both cards. Thomas moved back to Illinois in November, 2017, since which time he has been trying to regain both cards from the Defendants. SAC (Dkt 34), ¶¶ 4-5. Almost certainly not coincidentally, within two weeks of filing this Complaint in this case, the Defendants re-issued Thomas his FOID card; they still have not returned his CCL, and it is his right to carry a concealed firearm in accordance with Illinois law that he seeks here to vindicate. SAC ¶¶ 6-7.

4

Without even explanation for the *year and a half* delay, the Defendants now state that Thomas' June, 2020 CCL application was rejected because, in words of Defendants' Declarant Greg Hacker (Dkt 43-1, ¶ 5):

> I can further attest that ISP records indicate that Ryan Thomas submitted a CCL application on June 3, 2020. That application was rejected because Thomas submitted an invalid training certificate and/or an insufficient number of training hours.

There are numerous problems with this assertion: first, the Defendants provide no date on which the application was rejected; second, the Defendants cannot even from their own records determine precisely why it was denied (which would enable Thomas a fair chance at curing the deficiency); and third and most damaging here, this assertion is contradicted by the Defendants' own records. As of the date of the declaration the Defendants' own portal page for Thomas still shows that his application is "under review" (*See* Declaration and ISP CCL web portal screenshot of Ryan A. Thomas, attached hereto as Exhibit "A"). In addition, Thomas has not received any notice from the Defendants that his CCL application was denied. *Id.* Further, at the time Thomas submitted his appeal, his 5-year CCL (applied for in March 2014 and necessarily received after that) had not even expired. *Id.*

Of course, the Defendants do not indicate whether Thomas' pending CCL application is considered a new application, a renewal, or an appeal, all with different requirements, but Plaintiffs know that the Defendants will just claim that it is whatever Thomas did not do. This lack of communication and transparency (until suit is filed) is also a failing of the Defendants' system. It highlights the

5

Second Amendment violation because the applicant/appellant has no idea of what the Defendants perceive to be the deficiencies; she therefore has no opportunity to either cure or start the process to cure (such as using a different form or taking a course) that would satisfy the Defendants. A reasoned explanation, actually provided to the applicant/appellant, is essential to the preservation of Second Amendment rights, not to mention good government.

Thomas has, therefore, established that his Second and Fourteenth Amendment rights have been *and continue to be* denied by the Defendants' failure to process his CCL application. *See Moore v. Madigan*, 702 F.3d 933, 936 ("the [Second] amendment 'guarantee[s] the individual right to possess and carry weapons in case of confrontation.' Confrontations are not limited to the home") (internal cite omitted). Because this failure establishes both Thomas's injury and its tie to the Defendants' conduct, the Defendants' F.R. Civ. P. Rule 12(b)(1) motion to dismiss Thomas' claims should be denied.[2]

    B.    Defendants apply the wrong law to Singleton's claim.

Singleton applied for a FOID card in October, 2017 *(See* Declaration and ISP FOID web portal screenshot of Dovoni R. Singleton, attached hereto as Exhibit "B"*)*, but was denied due to a marijuana offense that occurred more than twenty years prior; in that situation, Singleton completed the required one year of probation; and, Singleton noted, that offense is now expungable. In order to regain his Second Amendment rights to keep and bear arms, Singleton filed an appeal with the

---

[2] Like Motwani, Lazic, and Singleton, Thomas' claim for monetary damages also remains.

6

Defendants on or about June 1, 2018. SAC ¶¶ 13 – 14.

Grasping on the word "expungable," the Defendants take this Court off on an irrelevant –and legally incorrect – tangent. The Defendants state that Singleton does not allege he has tried to have his criminal history expunged and assert he has not taken the action necessary under Federal law, 18 U.S.C. § 921(a)(20), that would allow him to remove the Federal bar to his possession of a firearm. 18 U.S.C. §922(g)(1). As a result, Defendants claim that he is not eligible for a FOID or CCL and therefore has not suffered an injury traceable to the Defendants. Defendants then conclude that his claims should be dismissed for lack of standing. Defendants' Memorandum, Dkt 43, p. 8.

Singleton pled the ability to expunge his prior offense for the sole purpose of demonstrating that the basis and nature of the offense – marijuana – no longer carries the legal (or cultural) implications that it did a few years, no less 20 years, ago.

Further, Defendants' argument wholly ignores the relevant statute, § 10(a) of the FOID Act, 430 ILCS 65/10(a), which provides:

> (a) Whenever an application for a Firearm Owner's Identification Card is denied, as provided for in Section 8 of this Act,…. the aggrieved party may appeal to the Director of State Police for a hearing upon such denial, revocation or seizure…

This right to appeal to Defendant Kelly is separate and apart from, *and not dependent upon*, any relief Singleton could obtain by way of expungement. Expungement of Singleton's conviction is not a prerequisite to the ISP ruling on his appeal, and not expunging it is certainly not an excuse

7

for the ISP sitting on Singleton's appeal for more than two years.

Furthermore, in *Johnson v. Dep't of State Police,* 20230 IL 124213 (Ill. 2020), the Illinois Supreme Court clearly stated that § 10 of the FOID Act provides an avenue for rehabilitation which removes the Federal impediment to obtaining a FOID card under 18 U.S.C. § 922(g)(1). As a result, Singleton is indeed entitled to an appeal under § 10 of the denial of his FOID card. The Defendants know perfectly well that many, many FOID appellants seek § 10 relief without expunging their records, and most felony convictions[4] are not expungable in the first place.

Defendant Kelly's failure to satisfy his statutory obligation to perform this appeal, not to mention the disingenuous effort to deny his own statutory responsibilities, has created and perpetuated Singleton's on-going injury that he suffers, and gives him standing to seek relief in this case. Accordingly, the Defendants' motion to dismiss as to Singleton should also be denied.

## II. The ISRA can assert independent financial injury necessary to support claims in its own right.

The Defendants challenge for the first time the organizational plaintiffs' standing to assert Second Amendment and Fourteenth Amendment claims in their own right. If this Court determines that the allegations do not support such claims, the ISRA should be granted leave to amend its claim to plead the necessary

---

[4] Of course, there are many other reasons to deny a FOID card application (*See* 430 ILCS 65/8), and almost all of them do not involve expungable criminal offenses, or criminal offenses at all, such as with Plaintiff Motwani.

8

element of a cognizable injury separate and independent of those it asserts on behalf of its members. In the related case of *Robinson,* the ISRA pleads in its Amended Complaint (Dkt 40):

> 55.     ISRA is also directly injured by the state's failure to timely approve FOID cards. To use the ISRA's Bonfield shooting range, ISRA members must pay an additional $600.00 annual range membership fee. But, as a prerequisite to range membership, the member must have a valid FOID card and submit a written application that includes his or her FOID card number and expiration date. Defendants' failure to timely process FOID card applications harms ISRA because it deprives ISRA of revenue it would otherwise receive while would-be members wait to receive their FOID cards. *See Craig v. Boren*, 429 U.S. 190, 194 (1976) (vendor had standing to challenge statute under which she "was obliged either to … incur[] a direct economic injury through the constriction of her buyers' market, or to disobey [a] statutory commend and suffer … 'sanctions and perhaps loss of license'").

In this case, the financial injury of loss of revenue is identical; here, however, the injury arises from the Defendants' failure to process denial/revocation appeals, thereby reducing the number of FOID holding individuals who could and would join the ISRA's Bonfield shooting range.

Such injury as the ISRA can (and has) alleged satisfies the independent injury necessary to support associational standing. The Seventh Circuit stated that "standing in the Article III sense does not require a certainty or even a very high probability that the plaintiff is complaining about a real injury, suffered or threatened." *Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 744-45 (7th Cir. 2007). The court explained: "as long as there is some nonnegligible, nontheoretical, probability of harm that the plaintiff's suit if successful would redress. As we have noted repeatedly, the fact that a loss or other harm on which a

suit is based is probabilistic rather than certain does not defeat standing." *Id.* "All that a plaintiff need show to establish standing to sue [in the Article III sense] is a reasonable probability—not a certainty—of suffering tangible harm unless he obtains the relief that he is seeking in the suit." *Id.*

Further, the Supreme Court has long recognized that a vendor has standing to pursue constitutional claims challenging prohibitions on sales to a particular group of consumers. In *Craig v. Boren*, 429 U.S. 190, 194-95 (1976), the Court held that a beer vendor was injured by a ban on the sale of 3.2% beer to young males because she was forced to choose between following the law and subjecting herself to sanctions by disobeying it. Because the ban injured the vendor, she was "entitled to assert those concomitant rights of third parties that would be 'diluted or adversely affected' should her constitutional challenge fail." *Id.* at 195. The ISRA is in the same position: if it were to knowingly allow individuals who lack FOID cards (due to delay) to use its range, it could suffer severe sanctions for aiding and abetting criminal conduct. *Cf.* 430 ILCS 65/14 (providing criminal penalties for possession of a firearm without a FOID card). Therefore, the Defendants' FOID delays injure the ISRA and it is entitled to assert the "concomitant rights" of its would-be patrons.

Accordingly, if the Court finds insufficient allegations in the SAC to support the organizations' independent injury, the ISRA respectfully requests leave to amend the SAC to add the necessary allegations.

10

IV. **The Organizational Plaintiffs have standing based on all individual Plaintiffs.**

The Defendants acknowledge that the organizational plaintiffs ISRA and SAF have standing based on Plaintiff Motwani's individual claim; the Defendants seem to attempt to narrow or minimize these claims, stating "that standing is limited to the type of claim raised by Motwani, *i.e.*, delays in the FOID appeals process." Response., p. 12.

The SAC clearly states all the Plaintiffs claims, alleging:

45.　Thomas, Lazic, Singleton, Motwani, and the organizational Plaintiffs' affected members, through sheer indifference and/or a refusal to process their FOID appeals on the part of the Defendants, have been denied their constitutionally guaranteed rights to keep and bear arms for self-defense.

46.　By so burdening Thomas', Lazic's, Singleton's, Motwani's, and the organizational Plaintiffs' affected members' ability to obtain a FOID card under Section 10 of the FOID Card Act, and likewise their ability to obtain and/or renew a CCL pursuant to Sections 10 and 50 of the FCCA, the Defendants have not only unjustifiably denied them their rights but effectively imposed a three-year ban on Thomas' and Lazic's rights to keep and bear arms for self-defense, and have effectively imposed an unending ban on Singleton's, Motwani's and the organizational Plaintiffs' affected members, rights to keep and bear arms for self-defense appeals on the part of the Defendants, have been denied their constitutionally guaranteed rights to keep and bear arms for self-defense.

These allegations properly state associational standing, especially since it is alleged the organizations have affected members even beyond the named individual Plaintiffs. *See Ezell*, 651 F.3d at 696. ISRA and SAF rely on these allegations, and

the other allegations in the SAC, to define the scope and breadth of their claims, as opposed to the limiting scope the Defendants artificially attempt to impose.

## V. The individual Plaintiffs state a claim for monetary damages against the Defendants.

The Defendants' final argument is that the individual Plaintiffs do not state a claim for monetary damages against the Defendants. But Plaintiffs do state such a claim, and Defendants' argument should be rejected.

The United States Supreme Court recently addressed the issue of nominal damages in a Second Amendment action. In *New York State Rifle & Pistol Ass'n. v. City of New York*, 140 S. Ct. 1525 (2020), the plaintiffs challenged certain city firearm transport restrictions which, by the time the matter reached oral argument at the Supreme Court, has been repealed by the city and preempted by a change in state law. *Id.* at 1526. The Court therefore declared the matter moot, but remanded the case back to the District Court to "consider whether petitioners may still add a claim for damages in this lawsuit with respect to New York City's old rule," since they had not asked for damages up until that point. *Id.* at 1527.

In dissent, Justice Alito opposed dismissing the case as moot, because, in relevant part, "if we reversed on the merits, the District Court on remand could award damages to remedy the constitutional violation that petitioners suffered." *Id.* at 1528 (Alito, J., dissenting). Justice Alito correctly noted that "[p]etitioners brought their claims under 42 U. S. C. § 1983, which permits the recovery of damages. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 695-701, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). And while the amended complaint does not

12

expressly seek damages, it is enough that it requests '[a]ny other such further relief as the [c]ourt deems just and proper.' App. 48. Under modern pleading standards, that suffices." *N.Y. State Rifle & Pistol Ass'n.*, 140 S. Ct. at 1535 (2020) (Alito, J., dissenting).

In *N.Y. State Rifle & Pistol Ass'n.*, Justice Alito further stated that:

> At a minimum, if petitioners succeeded on their challenge to the travel restrictions, they would be eligible for nominal damages. When a plaintiff's constitutional rights have been violated, nominal damages may be awarded without proof of any additional injury. See *Carey v. Piphus, 435 U. S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978)*; *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986). Nominal damages are "the appropriate means of vindicating rights whose deprivation has not caused actual, provable injury." *Id.*, at 308, n. 11 (internal quotation marks omitted); *see also Carey*, 435 U.S., at 266, 98 S. Ct. 1042, 55 L. Ed. 2d 252. And they are particularly important in vindicating constitutional interests. *See Riverside v. Rivera*, 477 U. S. 561, 574, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986) (plurality opinion). Consequently, courts routinely award nominal damages for constitutional violations. *See, e.g., Stoedter v. Gates*, 704 Fed. Appx. 748, 762 (CA10 2017) (Fourth Amendment); *Klein v. Laguna Beach*, 810 F. 3d 693, 697 (CA9 2016) (free speech); *Project Vote/Voting for America, Inc. v. Dickerson*, 444 Fed. Appx. 660, 661 (CA4 2011) (*per curiam*) (free speech); *Price v. Charlotte*, 93 F. 3d 1241, 1257 (CA4 1996) (equal protection).

*N.Y. State Rifle & Pistol Ass'n.*, 140 S. Ct. at 1535-36 (2020) (Alito, J., dissenting).

The Seventh Circuit has squarely ruled in favor of nominal damages for constitutional violations. Plaintiff previously cited to *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795 (7th Cir. 2016), but did not then note the Court's ruling:

> Last, we turn to the question of the nominal damages the district court awarded to Six Star. The City fights this because,

13

> it argues, Six Star suffered only *de minimis* harm. But it overlooks the fact that this is exactly the situation for which nominal damages are designed. And in civil rights cases, nominal damages are appropriate when a plaintiff's rights are violated but there is no monetary injury. *See Carey v. Piphus*, 435 U.S. 247, 266-67, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978).
>
> The City protests that Six Star could not have opened Silk East at 130 North Old World Third Street because another tenant occupied that space. Whether that is true is disputed: Six Star offered evidence that it leased the space to a tenant with the caveat that Six Star could displace the tenant immediately upon obtaining a theater license. Moreover, this fact is irrelevant to the legal issue, which relates to the First Amendment implications of the lack of clear licensing standards binding the City, not how quickly Six Star could have moved if the City had issued a license. The City is not defending these repealed ordinances. At most, the presence of the tenant might have been relevant to Six Star's damages, but given the award of nominal damages, even that point drops out.

*Six Star Holdings*, 821 F.3d at 805.

In this case, Plaintiffs' pending SAC specifically requests nominal damages, as a means of validation and acknowledgment that the Defendants have mistreated the Plaintiffs and violated their constitutional rights for a period of years. The Defendants were the persons directly responsible for the deprivation of Plaintiffs' rights, and here, at the Rule 12(b)(6) stage, there is certainly no evidence to suggest that anyone other than Defendants were responsible. These individual claims do not invoke the Eleventh Amendment, and if Defendants wish to declare they were not personally involved in the continuing debacle that is the FOID appeal system, they can try to make such a claim during discovery.

As far as the Defendants' Motion, it assumes the very conclusion it is asserting, with no offered proof and an attempt to deny Plaintiffs the opportunity to

14

counter the Defendants' denials. The Defendants' effort to skip discovery, skip the trial, and skip right to dismissal should be rebuffed.

In light of the above, the Defendants' Partial Motion to Dismiss should be denied in its entirety.

WHEREFORE, the Plaintiffs, RYAN A. THOMAS, GORAN LAZIC, DOVONI R. SINGLETON, MANISH MOTWANI, ILLINOIS STATE RIFLE ASSOCIATION, and SECOND AMENDMENT FOUNDATION, INC., respectfully request this Honorable Court deny Defendants' Partial Motion to Dismiss in its entirety, order the Defendants to answer the remainder of Plaintiffs' Second Amended Complaint by a date certain, and grant Plaintiffs and any all such further relief as this Court deems just and proper.

Dated: February 5, 2021                Respectfully submitted,

                                                                            RYAN A. THOMAS, GORAN LAZIC, DOVONI R. SINGLETON, MANISH MOTWANI, ILLINOIS STATE RIFLE ASSOCIATION, and SECOND AMENDMENT FOUNDATION, INC.

                                                                By:      /s/ David G. Sigale
                                                                                David G. Sigale

                                                                By:      /s/ Gregory A. Bedell
                                                                             Gregory A. Bedell

                                                                     Attorneys for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com

Gregory A. Bedell (Atty. ID# 6189762)
KNABE & BEDELL
33 North Dearborn Street
10th Floor
Chicago, Illinois 60602
312.977.9119
gbedell@kkbchicago.com