IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RYAN A. THOMAS, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 20-cv-0734 |
| BRENDAN F. KELLY, *et al.*, | Judge Mary M. Rowland |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Ryan Thomas, Goran Lazic, Dovoni Singleton, Manish Motwani, the Illinois State Rifle Association, and the Second Amendment Foundation bring this action against Brendan Kelly, Jarod Ingebrigtsen, and Jessica Trame. The plaintiffs allege violations their Second and Fourteenth Amendment rights. The defendants assert that several of the plaintiffs lack standing and have moved for their dismissal. For reasons stated herein, the defendants' Partial Motion to Dismiss [42] is granted in part and denied in part.

**I. Background**

The following factual allegations are taken from the Complaint (Dkt. 34), the declaration submitted alongside the Motion to Dismiss (Dkt. 43-1), and the declarations submitted with the Response (Dkts. 48-1, 2). In evaluating whether they state a legal claim under Federal Rule of Civil Procedure 12(b)(6), the allegations in the Complaint are accepted as true. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). In evaluating whether the plaintiffs have standing

1

under Rule 12(b)(1), the Court "is not bound to accept the truth of the allegations in the complaint, but may look beyond the complaint and the pleadings to evidence that calls the court's jurisdiction into doubt." *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000).

Plaintiffs Ryan Thomas, Goran Lazic, Dovoni Singleton, and Manish Motwani are all residents of Illinois. Dkt. 34, Compl. ¶¶ 3, 8, 12, 15. The defendants do not contest Motwani's standing in this Motion. There are also two organizational plaintiffs: the Illinois State Rifle Association (ISRA) and the Second Amendment Foundation (SAF). Each has thousands of members and are focused on helping individuals privately possess firearms. *Id.* at ¶¶ 19, 22. All the individual plaintiffs are members of both organizations. *Id.* at ¶ 24.

Defendant Brendan Kelly is the Acting Director of the Illinois State Police (ISP). *Id.* at ¶ 25. Defendant Jarod Ingebrigtsen is the Bureau Chief of the Firearm Services Bureau. *Id.* at ¶ 26. And Defendant Jessica Trame is the former Chief of that same bureau. *Id.* at ¶ 28. All of the defendants were or are responsible for the administration of Illinois's firearm licensing law. Kelly and Ingebrigtsen are sued in both their individual and official capacities. *Id.* at ¶¶ 25, 27, 29. Trame is sued in her individual capacity only. *Id.* at ¶ 29.

In Illinois, in order to legally possess firearms, one must first obtain a Firearms Owners Identification (FOID) card. Dkt. 34, Compl. ¶ 33. A FOID card is a prerequisite for obtaining a Concealed Carry License (CCL). *Id.* at ¶ 32. Both the card and license are issued by the ISP. *Id.* at ¶¶ 38-39. State law requires that the ISP

2

decide on a CCL application within ninety days. Id. at ¶ 43. When an individual has been denied a FOID card, has not received a decision within thirty days, or has had their card revoked, § 10 of the governing statute allows the applicant to appeal the decision to the Director of the ISP. *Id.* at ¶ 41.

Thomas is resident of Wilmette, Illinois. *Id.* at ¶ 3. In 2015, he moved to Texas, and in 2016, his FOID card and CCL were revoked because he resided out of state. *Id.* at ¶ 4. In 2017, he returned to Illinois. *Id.* at ¶ 5. He applied to have his card and license reinstated and contacted the ISP by telephone multiple times. "For years" however, the ISP website has listed his status as "revoked" and the ISP has never returned his multiple inquiries. *Id.*

In February 2020, less than two weeks after his filed the instant lawsuit, he received his FOID card. *Id.* at ¶ 6. He has not received an update on his CCL application. *Id.* According to the defendants, Thomas's CCL application has been denied because he submitted an invalid training certificate or did not have enough training hours. Dkt. 43-1, Hacker Decl. at ¶ 5. The plaintiffs insist that Thomas's application is still pending, relying on the ISP website which lists his application as "under review." Dkt. 48-1, Thomas Decl. at ¶ 4 (second).

Lazic is a resident of Vernon Hills, Illinois. In May 2017, Lazic, who had a valid FOID card and CCL at the time, was arrested for domestic battery. Dkt. 34, Compl. ¶ 9. As a result, his FOID card and CCL were revoked in June of that year. *Id*. Also in June, the charges against him were dismissed. In 2018, his arrest was expunged. *Id*. Following the expungement, Lazic submitted an appeal to regain his FOID card

and CCL. *Id.* at ¶ 10. One week after filing the present lawsuit, his FOID card was issued. He has also subsequently received his CCL. *Id.* at ¶ 11.

Singleton lives in Chicago. In May 2018, he applied for a FOID card, but was denied due to a twenty-year old marijuana offense. *Id.* at ¶ 13. The offense is now expungable. *Id.* Singleton appealed the denial and has received no follow up or correspondence from the ISP. *Id.*

The delays caused by the ISP appeals process serve as the basis for the present lawsuit. The plaintiffs allege violations of their Second and Fourteenth Amendment rights. *Id.* at ¶¶ 48-49, 58-59. They seek an injunction granting them, as well as similarly situated members of ISRA and the SAF, FOID cards and CCLs, and damages for the harm caused by ISP's delays. The defendants argue that Thomas, Lazic, and Singleton lack standing, that the organizational plaintiffs are limited to the issues raised in Motwani's case, and that all of the plaintiffs fail to state a claim for monetary damages.

**II.  Standard**

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing

4

that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

The defendants also challenge the Court's subject matter jurisdiction under Rule 12(b)(1). When tested, the plaintiff bears the burden of establishing subject matter jurisdiction. *See Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589 (7th Cir. 2014). In evaluating disputed facts, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citations omitted).

5

### III. Analysis

In their Motion to Dismiss, the defendants argue that (1) Lazic, Thomas, and Singleton lack standing for declaratory and injunctive relief; (2) the organizational plaintiffs' standing is limited to the issues raised by Motwani; (3) the plaintiffs fail to state a claim for monetary damages.

**A. Monetary Damages**

Along with declaratory and injunctive relief, the plaintiffs seek monetary damages for the harm arising from the delay in receiving their FOID cards and CCLs. It is well-established that the Eleventh Amendment bars suits for damages against state officers acting in their official capacity. *See Katz-Crank v. Haskett*, 843 F.3d 641, 647 (7th Cir. 2016). Thus, the plaintiffs only avenue for relief is to assert the claims against Kelly, Ingebrigtsen, and Trame in their personal capacity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

In order to state a claim for damages under § 1983, however, a plaintiff must allege a constitutional violation arising from the "defendant's personal acts or decisions." *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). Simply being aware of a violation taking place under one's supervision is not enough to establish liability. *Crowder v. Lash*, 687 F.2d 996, 1006 (7th Cir. 1982) (holding that a Commissioner of Corrections cannot be held liable for being aware of constitutional violations taking place at a jail under his control). The plaintiffs, however, have not alleged that any of the three defendants engaged in any personal acts or made any decisions that would

give rise to liability. Instead, the Complaint asserts that each defendant oversaw the ISP's firearms licensing. This is insufficient to state a claim.

In their Response, the plaintiffs focus their argument on whether nominal damages are permitted for Second Amendment violations. But the Court need not reach that question because the plaintiffs have not pled enough to state a claim for damages in the first place. The plaintiffs say that the defendants are trying to avoid discovery, but it is the plaintiffs' responsibility to produce a Complaint detailed enough to survive a motion to dismiss. *See Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016). They have not done so here, and the claim for money damages on behalf of all the plaintiffs, including Mr. Motwani, is dismissed without prejudice.

**B. Individual Plaintiffs' Standing**

*Lazic*

It is undisputed that Lazic has received both his FOID card and CCL. In their Response, the plaintiffs concede that his claims for declaratory and injunctive relief are moot. As a result, Lazic lacks standing to bring such claims. With his claims for monetary damages also dismissed, Lazic is dismissed from this lawsuit.

*Thomas*

The next issue is whether Thomas has standing to bring a claim. In order to establish Article III standing, and thus the federal court's subject matter jurisdiction, a plaintiff must show that she has suffered an "injury in fact;" that there is a causal connection between the injury and the defendant's actions; and that the injury is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

560–61 (1992). In this case, Thomas's FOID card has already been granted, leaving only his CCL at issue. The defendants have supplied a declaration by Greg Hacker, the Firearms Services Bureau Chief for ISP, stating that Thomas has been *denied* a CCL because his application did not meet the statutory requirements. He allegedly submitted an invalid training certificate. Thus, he, himself, is responsible for his injury, not the defendants.

The plaintiffs disagree. They raise several issues with Hacker's declaration, observing that it fails to identify the date Thomas's application was rejected; it does not explain whether his application was denied because of an invalid certificate or because he had not completed enough training; and it is inconsistent with the ISP website that lists Thomas's application as "under review." Dkt. 48-1, Thomas Decl. 4. While this lack of transparency is troubling, and speaks to serious issues in the ISP's review process, it does not address the legal point: deficiencies in Thomas's application, not any actions of the defendants, are what prevent Thomas from obtaining a CCL.

Although not as detailed as one might hope, the Court considers Hacker's declaration credible. At the moment, there is not a causal connection between Thomas's injury, the lack of a CCL, and the defendants' actions. The plaintiff's do not challenge the licensing requirement itself, and so it is his responsibility to submit a legally sufficient application. Only then would he have standing to assert a constitutional claim. Thomas's claims are dismissed without prejudice.

*Singleton*

The defendants also argue that Singleton lacks standing or that his claim is not ripe. In order to receive a FOID card, the ISP must determine that the applicant is not barred from possessing a firearm by federal law. 430 ILCS 65/8(n). One such federal bar applies to individuals with felony convictions. 18 U.S.C. § 922(g)(1). The statute, however, excludes those convictions that have been "expunged, or set aside or for which a person has been pardoned or has had civil rights restored." 18 U.S.C. § 921(a)(20). If an Illinois resident has had her "civil rights restored," or had her felony expunged or pardoned, the federal bar no longer prevents her from obtaining a FOID card.

In *Johnson v. Department of State Police*, the Illinois Supreme Court held that the appeal process outlined in § 10 of the Illinois FOID statute was a means by which an applicant's civil rights could be restored, negating the federal prohibition. 2020 IL 124213, ¶ 51; *see* 430 ILCS 65/10.[1] The court's view was that the ISP could not rely on the federal prohibition to deny an FOID card if the person qualified to have his "civil rights restored." *Johnson*, 2020 IL 124213, ¶ 51.

Singleton has a felony conviction, but one that he contends is expungable. Thus, he is currently prohibited from possessing a firearm under federal law but can have his rights restored. He has now appealed ISP's denial of his request for an FOID Card, consistent with § 10. The plaintiffs contend that, as in *Johnson*, the ISP has the power to restore his civil rights through the appeal process, lift the federal barrier, and grant

---

[1] The Court offers no view at this stage if this reading of federal law is accurate. What is relevant is that ISP is bound by the Illinois Supreme Court's interpretation of its own state law.

9

him a FOID card. The defendants, meanwhile, argue that this issue is not ripe because Singleton has other avenues besides the ISP by which the federal barrier could be removed. Namely, he could have his conviction expunged or petition the governor for a pardon.

The ripeness doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967). Usually appearing in the context of challenges to administrative regulations, "'the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality.'" *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)). In this case, the conflict is both immediate and real. The ISP's delay in evaluating Singleton's appeal is the proximate barrier to his obtaining the FOID card that he seeks. The ripeness doctrine does not require Singleton to pursue some other path that may resolve his issues, it only evaluates whether the present conflict is substantial. If Singleton pursues a pardon, there is of course no guarantee one will be granted. And if he succeeds in seeking an expungement, he will have to reapply for a card, further delaying his application for a FOID card.

The defendants attempt to distinguish *Johnson*. They argue that the plaintiff in *Johnson* had previously petitioned for a pardon and the underlying conviction at issue was for misdemeanor for domestic violence. *Johnson v. Dep't of State Police*, 2020 IL

10

124213, ¶¶ 3-5. But the plaintiff's petition for a pardon did not factor into the *Johnson* court's analysis, and the federal statute does not suggest that one must first seek a pardon before pursuing other paths of relief. And while misdemeanor domestic violence convictions are addressed in a different portion of the federal statute, the language discussing expungement, pardons, and the restoration of civil rights is functionally identical. *Compare* 18 U.S.C. § 921(a)(20), *with* § 921(a)(33)(B)(ii). Defendants have offered no reason to conclude that the *Johnson* court found the ISP appeal process applies in the one context but not the other.

The defendants also assert in their Reply that Singleton has not properly invoked the civil rights restoration process described in *Johnson*. They draw a distinction between 430 ILCS 65/10(a), which permits appeals of denied FOID cards, and 10(c), which allows one to apply for relief from firearm prohibitions. Singleton, they say, has used the 10(a) process and not the 10(c) one. On the face of the statute, it is not clear that the 10(c) process is necessarily separate from a 10(a) appeal. In *Johnson*, the Illinois Supreme Court appears to treat a 10(c) petition for relief as a subsidiary component of a 10(a) appeal. *See* 2020 IL 124213 at ¶ 18. The defendants have not provided any declarations or other evidence suggesting that these processes are administered separately or that they do not have the information needed to lift the federal bar. If relevant information is later produced, the Court may revisit its standing determination, but for now the defendants' Motion is denied as to Singleton.

### C. Organizational Plaintiffs' Standing

The defendants assert the ISRA and the SAF lack standing themselves and are limited to standing on behalf of Motwani. The Court agrees.

*Standing on Their Own Behalf*

As discussed above, in order to have standing, a plaintiff must be able to identify an "injury in fact" that they have suffered. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A mere "abstract interest" in a particular topic is not enough to grant standing. *Muro v. Target Corp.*, 580 F.3d 485, 491 (7th Cir. 2009). In their Complaint, the plaintiffs do not identify any actual injury that ISRA and the SAF have suffered by the delay in the FOID appeal or CCL processing. In their Response, they copy allegations from a separate case, *Robinson v. Kelly*, No. 20-cv-04270, to assert organizational standing for ISRA and request leave to amend their Complaint if necessary. The Court need not determine whether granting leave to amend is appropriate, however, because even these additional assertions fail to establish ISRA's standing.

In their Response, the plaintiffs state that ISRA operates a shooting range in Bonfield, Illinois. It is available to members if they pay an additional $600 annual fee. In order to gain access to the range, however, the member must have an FOID card. So, the plaintiffs assert, ISRA is harmed by the long delays in FOID appeal processing because it denies them of revenue they otherwise would have received. Importantly, however, they do not assert that any delayed member would actually purchase a range membership.

In order to show an injury, a plaintiff must assert "some nonnegligible, nontheoretical, probability of harm." *MainStreet Org. of Realtors v. Calumet City*, Ill., 505 F.3d 742, 744 (7th Cir. 2007). A harm that is probabilistic, for example a proposed ordinance that may increase or decrease property values, can provide standing. *See id*. But the harm claimed here is not an identified harm that has some percentage of likelihood to arise from a particular action. Instead, it is speculation that more people with FOID cards in the population may translate into more range revenue. The mere theoretical possibility that someone would purchase range passes is not enough to confer standing. This is reinforced by the fact that, as the defendants point out, the shooting range is located in a town of about four hundred people around fifty miles from Cook County.

The plaintiffs correctly state that loss of revenue can be a cognizable injury. *See Craig v. Boren*, 429 U.S. 190 (1976) (holding that a beer vendor prohibited from selling to young men had standing to sue for discrimination). But in *Craig*, there was no question as to whether the plaintiff had potential customers. Here, the plaintiffs have conspicuously failed to plead that any of the appealing ISRA members would shell out the $600 if they could. As a result, the organization does not have standing on its own behalf.

*Associational Standing*

Along with their own standing, organizations may also assert standing on behalf of their members. An organization may exercise such associational standing when: "(1) its members would otherwise have standing to sue in their own right, (2) the

13

interests it seeks to protect are germane to the organization's purpose, and (3) neither the claims asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Disability Rts. Wisconsin, Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 801 (7th Cir. 2008). The defendants concede that both ISRA and the SAF have associational standing on behalf of Motwani but argue that their standing is limited to the issues he raises. Alongside Motwani, we add Singleton, who we have found has standing.

The defendants assert that other members beyond those listed are also injured, giving the organizations standing on their behalf. But the Complaint simply lists the "the organizational Plaintiffs' affected members" among those harmed. Dkt. 34, Compl. ¶¶ 25, 27, 29. An organization need not name affected individuals to establish standing. *See Disability Rts. Wisconsin, Inc.*, 522 F.3d at 802. But they must provide "specific allegations" of a harmed individual who would have standing to sue in his own right. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498, 129 S. Ct. 1142, 1151, 173 L. Ed. 2d 1 (2009). Because no such allegations have been made beyond those of the individual plaintiffs, ISRA and the SAF's organizational standing is limited to those issues raised by Motwani and Singleton's claims.

### IV. Conclusion

For the stated reasons, the defendants' Partial Motion to Dismiss [42] is granted as to Thomas and Lazic and denied as to Singleton; all the plaintiffs' claims (including Motwani's) for money damages are dismissed; and ISRA and the SAF's standing is limited to those issues raised by Motwani and Singleton.

14

E N T E R:

Dated: June 9, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge